UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1923

EASTERN ASSOCIATED COAL CORPORATION,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; CLARA SUE TOLER, Administratrix
of the Estate of Arvis R. Toler,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(13-0531 BLA)

Argued: September 17, 2015            Decided: November 6, 2015

Before MOTZ, KING, and GREGORY, Circuit Judges.

Petition for review denied by published opinion. Judge King
wrote the opinion, in which Judge Motz and Judge Gregory joined.

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG, LLP,
Washington, D.C., for Petitioner. Evan Barret Smith,
APPALACHIAN CITIZENS LAW CENTER, Whitesburg, Kentucky; Jeffrey
Steven Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington,
D.C., for Respondents. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG
TRAURIG, LLP, Washington, D.C., for Petitioner. M. Patricia
Smith, Solicitor of Labor, Rae Ellen Frank James, Associate
Solicitor, Gary K. Stearman, Counsel for Appellate Litigation,
Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR,

Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

_____

KING, Circuit Judge:

Eastern Associated Coal Corporation petitions for review of the 2014 decision of the Benefits Review Board (the "BRB") affirming an award of black lung benefits to Arvis R. Toler. Toler first applied for black lung benefits in 1993, but that claim was denied. In granting Toler's second claim for benefits, which was filed in 2008, an administrative law judge ("ALJ") invoked the rebuttable presumption that a coal miner with a fifteen-year work history of underground coal mining and a totally disabling pulmonary impairment is disabled due to pneumoconiosis (the "fifteen-year presumption"). Eastern contends that, by applying the fifteen-year presumption to Toler's second claim, the ALJ contravened the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 (the "Act"), and its regulations, as well as principles of finality and separation of powers. As explained below, we deny the petition for review and thereby affirm the BRB's decision.

I.

A.

1.

Congress created the black lung benefits program in 1969 "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents

3

of miners whose death was due to such disease." 30 U.S.C. § 901(a). Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." Id. § 902(b).

The Act empowers the Secretary of Labor (the "Secretary") to implement its provisions and promulgate appropriate standards for determining whether a coal miner is entitled to benefits thereunder. See 30 U.S.C. §§ 902(c), 921(b), 936(a). Pursuant to the regulations, a miner must "establish[]" four "[c]onditions of entitlement" to obtain black lung benefits: (1) that he has pneumoconiosis; (2) that his pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled; and (4) that pneumoconiosis contributes to his total disability. See 20 C.F.R. § 725.202(d); see also W. Va. CWP Fund v. Bender, 782 F.3d 129, 133 (4th Cir. 2015).

The applicable regulations identify two types of pneumoconiosis: legal and clinical. 20 C.F.R. § 718.201(a). Clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." Id. § 718.201(a)(1). Legal pneumoconiosis is

4

defined more broadly to "include[] any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Id. § 718.201(a)(2). Clinical pneumoconiosis can be further classified as either "simple" or "complicated." See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7 (1976). Complicated pneumoconiosis, sometimes referred to as "progressive massive fibrosis," see Lisa Lee Mines v. Dir., OWCP, 86 F.3d 1358, 1359-60 (4th Cir. 1996) (en banc), is characterized by the presence of "massive lesions" in the lungs that resolve on imaging as opacities at least one centimeter in diameter. See 30 U.S.C. § 921(c)(3).

Congress has occasionally "recalibrated" the applicable standards for entitlement to benefits under the Act. See W. Va. CWP Fund v. Stacy, 671 F.3d 378, 381 (4th Cir. 2011). In 1972, responding to mounting evidence that meritorious claims were being unjustifiably denied, Congress amended the Act to afford a presumption of total disability due to pneumoconiosis to a coal miner who could show that he had worked underground for at least fifteen years and was suffering from a totally disabling respiratory or pulmonary impairment. See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, § 4(c), 86 Stat. 150, 154 (codified as amended at 30 U.S.C. § 921(c)(4)); Bozwich v. Mathews, 558 F.2d 475, 478-79 (8th Cir. 1977). The fifteen-year

5

presumption could be rebutted "only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."  See 30 U.S.C. § 921(c)(4).[1]  In 1981, Congress repealed the fifteen-year presumption for claims filed on or after January 1, 1982.  See Black Lung Benefits Revenue Act of 1981, § 202(b)(1), Pub. L. No. 97-119, 95 Stat. 1635, 1643 (repealed 2010); Bender, 782 F.3d at 134.

In March 2010, Congress restored the fifteen-year presumption — after a twenty-nine-year hiatus — by enacting § 1556(a) of the Patient Protection and Affordable Care Act (the "ACA"), Pub. L. No. 111-148, 124 Stat. 119, 260 (2010) (codified at 30 U.S.C. § 921(c)(4)).  Section 1556(c) of the ACA provided that the fifteen-year presumption "shall apply with respect to claims filed . . . after January 1, 2005, that are pending on or after the date of enactment" of the ACA — that is, March 23, 2010.

In 2013, the Secretary promulgated regulations implementing the revived fifteen-year presumption.  See 20 C.F.R. § 718.305; Bender, 782 F.3d at 134-35.  Under those regulations, a party

---

[1] A coal miner with complicated pneumoconiosis is entitled to an irrebuttable presumption of total disability due to pneumoconiosis.  See 30 U.S.C. § 921(c)(3).

6

opposing a claim for benefits is entitled to rebut the fifteen-year presumption by establishing either (1) that the miner has neither legal pneumoconiosis nor clinical pneumoconiosis arising out of coal mine employment, or (2) "that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1). In other words, to rebut the fifteen-year presumption, the opposing party is obliged to "'rule out' any connection between [the] miner's pneumoconiosis and his disability." See Bender, 782 F.3d at 135.

2.

Under the regulations governing subsequent black lung benefits claims, a coal miner who has had an earlier claim for benefits denied must establish "that one of the applicable conditions of entitlement" specified in § 725.202(d) "has changed since the date upon which the order denying the prior claim became final." See 20 C.F.R. § 725.309(c). The regulations limit the "applicable conditions of entitlement" to "those conditions upon which the prior denial was based." Id. § 725.309(c)(3). If the applicable conditions of entitlement "relate to the miner's physical condition," then "the subsequent claim may be approved only if new evidence submitted in connection with the subsequent claim establishes at least one applicable condition of entitlement." Id. § 725.309(c)(4). If

7

a claimant fails to show a change in an applicable condition of entitlement, the claim must be denied. Id. § 725.309(c). But, if the claimant shows a change in an applicable condition of entitlement, none of the findings from the prior adjudication are binding, and the new claim must be evaluated de novo, based on all of the evidence. Id. § 725.309(c)(5). Even if the claimant prevails on the subsequent claim, no benefits may be awarded for the period adjudicated by the prior claim. Id. § 725.309(c)(6).

Prior to 2000, § 725.309 required a coal miner whose earlier claim was denied to show a "material change in conditions" in order to pursue a subsequent claim. See Lisa Lee Mines, 86 F.3d at 1360. During that period, the Director of the Office of Workers' Compensation Programs (the "Director"), the BRB, and the courts of appeals rendered conflicting interpretations of the regulatory phrase "material change in conditions." To resolve that conflict and clarify the applicable standard, the Secretary initiated notice-and-comment rulemaking pursuant to the Administrative Procedure Act, 5 U.S.C. § 553. See Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 62 Fed. Reg. 3338-01, 3351-52 (proposed Jan. 22, 1997). At the conclusion of that rulemaking process, the Secretary promulgated a final rule (the "2000 Final Rule") establishing the standard currently

8

specified in § 725.309. See Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79,920-01, 79,968, 80,067-68 (Dec. 20, 2000) (to be codified at 20 C.F.R. § 725.309).

The Secretary's 2000 Final Rule expressly adopted our Court's en banc 1996 decision in Lisa Lee Mines on the meaning of a "material change in conditions." In the preamble to the 2000 Final Rule, the Secretary explained that she was "effectuat[ing]" Lisa Lee Mines. See 2000 Final Rule, 65 Fed. Reg. at 79,968; see also Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 64 Fed. Reg. 54,966-01, 54,984 (proposed Oct. 8, 1999) ("The [Secretary]'s subsequent claims provision gives full effect to the Fourth Circuit's decision in Lisa Lee Mines . . . ."). Because the Secretary expressly endorsed and adopted Lisa Lee Mines when she promulgated the 2000 Final Rule, Lisa Lee Mines remains the law of this Circuit and guides our interpretation of § 725.309.[2]

---

[2] As we recognized in Harman Mining Co. v. Director, OWCP, the preamble to the 2000 Final Rule "may serve as a source of evidence concerning contemporaneous agency intent." See 678 F.3d 305, 316 (4th Cir. 2012) (internal quotation marks omitted).

Alva Rutter, the coal miner-claimant in Lisa Lee Mines, unsuccessfully sought black lung benefits in 1986. See 86 F.3d at 1360. Three years thereafter, he filed a second claim, supported by more recent x-rays that indisputably established his entitlement to benefits. Id. at 1359-60. Lisa Lee Mines, the responsible operator, contested Rutter's claim solely on the ground that Rutter had not shown a "material change in conditions." Id. at 1360. An ALJ ruled that Rutter had shown such a change, reasoning that the medical evidence showed "a definite progression" of Rutter's disease "resulting in [Rutter's] reduced capacity to do his former coal mine work." Id. The ALJ further concluded that, even if Rutter failed to show a material change in conditions, the 1986 denial was "erroneous on its face and 'null and void ab initio.'" Id. Accordingly, the ALJ awarded benefits effective on the date that Rutter's first claim was filed. Id. The BRB affirmed the award of benefits, but concluded that the ALJ was not entitled to reopen the 1986 denial. Id. It therefore modified the award to provide that benefits would be payable only as of the date Rutter filed his second claim. Id.

Lisa Lee Mines then sought review in this Court. In our en banc decision, we agreed that the BRB had properly reversed the ALJ's reopening of the 1986 denial. See Lisa Lee Mines, 86 F.3d

at 1361. We explained that, because the 1986 decision was "final," that decision "and its necessary factual underpinning" must be accepted as "correct." Id. We emphasized, however, that the first BRB decision did not bar a subsequent claim "as a matter of ordinary res judicata," because "[t]he health of a human being is not susceptible to a once-in-a-lifetime adjudication." Id. at 1362. Rutter's second claim for black lung benefits required an assessment of his condition when that claim was filed, an issue which neither was — nor could have been — litigated in connection with Rutter's first claim. Id.

We then addressed the appropriate standard for evaluating subsequent claims for black lung benefits, and we adopted the "one element" standard advanced by the Director. See Lisa Lee Mines, 86 F.2d at 1362-64. That rule required the claimant "to prove, under all of the probative medical evidence of his condition after the prior denial, at least one of the elements previously adjudicated against him." Id. at 1362. We rejected a more stringent standard, drawn from the Seventh Circuit's decision in Sahara Coal Co. v. OWCP, 946 F.2d 554, 556 (7th Cir. 1991), that would have required the claimant to show a change in condition on every element previously decided against him, because it did not "account for the frailty of alternative holdings," and because it required "a plenary review of the evidence behind the first claim." Lisa Lee Mines, 86 F.3d at

11

1363. We also rejected the standard sponsored by the BRB in Spese v. Peabody Coal Co., 11 BLR 1-174, 1-176 (Ben. Rev. Bd. 1988), which would have allowed a coal miner's subsequent claim to proceed if the miner presented new evidence that raised a reasonable possibility of changing the result, deeming such a standard vague, illogical, and "arguably" too lenient. Lisa Lee Mines, 86 F.3d at 1363.

## B.

### 1.

For twenty-seven years, Arvis Toler worked in and about Eastern's coal mines in southern West Virginia, primarily as an electrician. For sixteen of those years, Toler toiled underground, where he was exposed to high concentrations of coal dust. Between approximately 1966 and 1997, he generally smoked a pack of cigarettes each day. Toler began to experience shortness of breath in the mid-1980s. His breathing problems worsened, and, in 1993, at age fifty-five, Toler's failing health caused him to quit his job as a coal miner.

In 1993, shortly before he left Eastern, Toler filed his first claim for black lung benefits. An ALJ found that Toler was totally disabled by severe obstructive pulmonary disease, but also that Toler had failed to show that his work in the coal mines (rather than his smoking habit) caused his pulmonary illness. As such, the ALJ denied Toler's claim for benefits.

12

The BRB affirmed the ALJ's decision, explaining that the ALJ had properly weighed the evidence and permissibly found that Toler had not shown by a preponderance of the evidence that he suffered from pneumoconiosis. Toler thereafter petitioned this Court for review of the BRB's adverse decision. In 1998, we denied Toler's petition for review and affirmed the BRB. See Toler v. E. Assoc. Coal Corp., No. 97-2148 (4th Cir. Aug. 19, 1998) (unpublished).

2.

a.

Despite leaving his coal mine work and abandoning his smoking habit, Toler's respiratory condition continued to decline. By 2000, Toler required supplemental oxygen, and he began using oxygen twenty-four hours per day in 2008.

Toler filed his second claim for black lung benefits on February 26, 2008. In April 2008, the Director had Toler undergo a complete pulmonary evaluation. See 20 C.F.R. § 725.406(a). As part of that evaluation, Toler had a chest x-ray, which a radiologist read as positive for simple pneumoconiosis, as well as blood gas and pulmonary function tests, which indicated that Toler was permanently disabled due to a pulmonary impairment. Based on those tests, and on his own examination of Toler, Dr. John Burrell diagnosed "[s]imple pneumoconiosis category s/t, 1/0; severe chronic obstructive

13

pulmonary disease; [and] [arteriosclerotic heart disease] with [coronary artery disease], based on history, physical, chest x-ray, [arterial blood gas test results] & [pulmonary function studies]." See J.A. 243.[3]  Dr. Burrell identified smoking and occupational exposure to coal dust as causes of Toler's pulmonary impairments.

Both Toler and Eastern submitted additional evidence to the Director regarding the second claim.  Toler furnished a radiologist's reading of a July 14, 2008 x-ray that was also positive for simple pneumoconiosis, and Eastern introduced a negative reading of the April 2, 2008 x-ray.

On October 23, 2008, the district director issued a proposed decision and order granting Toler's second claim. Because Eastern objected to the decision, Toler's second claim was scheduled for a March 17, 2010 hearing before an ALJ.  Toler testified at the hearing and introduced several new exhibits. Toler's exhibits included a second reading of the July 14, 2008 x-ray as positive for pneumoconiosis, as well as additional pulmonary function and blood gas studies.  Toler also submitted a letter from his treating physician advising that Toler "has severe obstructive lung disease with pulmonary nodule and

---

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this matter.

intermittent infiltrates" and opining that "it is quite probable given the severity of Mr. Toler's disease that coal dust played an integral role in [its] development." J.A. 103.

Eastern introduced several other exhibits into evidence, including negative readings of the April and July 2008 x-rays, a December 11, 2009 digital x-ray, and five CT scans taken between December 2006 and November 2008. In addition, Eastern furnished reports by Dr. David Rosenberg and Dr. Joseph Renn concluding that Toler did not have pneumoconiosis. Finally, Eastern took the uncontested depositions of Drs. Rosenberg and Renn and introduced those depositions.

b.

On June 15, 2010, the ALJ issued his Decision and Order (the "2010 ALJ Order") granting Toler's claim for benefits. The ALJ accepted the parties' stipulations that Toler was a coal miner, that Toler was totally disabled from a pulmonary impairment, and that Eastern was the responsible operator. Based thereon, the ALJ applied the newly restored fifteen-year presumption to Toler's claim and identified the only remaining issue as "[w]hether [Eastern] can establish that [Toler] does not suffer from pneumoconiosis." See 2010 ALJ Order 3. The ALJ then examined the opinions of Drs. Rosenberg and Renn, rejecting both because they were grounded in a misinterpretation of a medical study and because those experts had failed to consider

15

Toler's twenty-seven-year history of coal mine employment. Accordingly, the ALJ concluded that Eastern had failed to demonstrate that Toler did not have pneumoconiosis or that his pulmonary impairment did not arise out of, or in connection with, Toler's coal mine employment.

Eastern appealed the 2010 ALJ Order to the BRB, which promptly remanded to the ALJ to afford Eastern the opportunity to submit new evidence aimed at rebutting the fifteen-year presumption. On remand, Eastern submitted to the ALJ an additional report from Dr. Rosenberg, and both Eastern and Toler submitted briefs supporting their respective positions.

On August 1, 2013, the ALJ issued his second Decision and Order (the "2013 ALJ Order") granting Toler's claim for black lung benefits. Relying on the Seventh Circuit's decision in Consolidation Coal Co. v. Director, OWCP, 721 F.3d 789 (7th Cir. 2013) (hereinafter "Bailey"), the ALJ again applied the fifteen-year presumption to Toler's second claim. In assessing whether Eastern had rebutted that presumption, the ALJ discussed the evidence in some detail. The ALJ first concluded that the radiological evidence was inconclusive as to pneumoconiosis, and thus insufficient to meet Eastern's burden. Turning to the expert evidence, the ALJ again rejected Drs. Rosenberg's and Renn's opinions for much the same reasons specified in the 2010 ALJ Order. The ALJ evaluated and rejected Dr. Rosenberg's

16

supplemental report, reasoning, inter alia, that Dr. Rosenberg's conclusions were "inconsistent with the [Secretary]'s findings in the preamble to" the 2000 Final Rule.  See 2013 ALJ Order 10.[4] Thus, the ALJ concluded that Eastern had failed to rebut the fifteen-year presumption and that Toler was entitled to benefits.

Eastern thereafter appealed the 2013 ALJ Order to the BRB, which affirmed the ALJ by its Decision and Order of July 7, 2014 (the "BRB Decision").  The BRB considered and rejected Eastern's arguments that principles of finality and res judicata precluded application of the fifteen-year presumption to Toler's second claim.  In rejecting Eastern's contention that Toler improperly sought to relitigate or reopen his first claim, the BRB invoked our teaching in Lisa Lee Mines, 86 F.3d at 1362, that a subsequent claim is not the same as a prior claim and is not barred by the denial of the earlier claim.  Because the adjudication of Toler's second claim did not disturb either the denial of benefits on his first claim or this Court's

---

[4] In the preamble to the 2000 Final Rule, the Secretary explained that "[e]pidemiological studies have shown that coal miners have an increased risk of developing COPD."  2000 Final Rule, 65 Fed. Reg. 79,973.  The Secretary's review of the medical literature revealed that the severity of COPD among coal miners "was related to the amount of dust in the lungs," and that this correlation "held even after controlling for age and smoking habits."  Id. at 79,941.

disposition of his petition for review, the BRB concluded that granting the second claim did not offend any constitutional principles relating to separation of powers. Relying on the Seventh Circuit's Bailey decision, the BRB also rejected Eastern's contention that the fifteen-year presumption cannot be used to establish a change in an applicable condition of entitlement. Finally, the BRB rejected Eastern's contentions that the ALJ had applied an improper rebuttal standard and erred in ruling that Eastern failed to rebut the fifteen-year presumption.

Eastern has filed a timely petition for review of the BRB Decision, in which the Director and Toler's widow are presently the respondents.[5] We possess jurisdiction to consider Toler's petition for review pursuant to 30 U.S.C. § 932(a) and 33 U.S.C. § 921(c).

II.

We review an ALJ decision that has been affirmed by the BRB to determine whether it is in accordance with the law and supported by substantial evidence. See Island Creek Coal Co. v.

---

[5] On March 19, 2015, after this matter was fully briefed, Toler passed away. His widow, Clara Sue Toler, as administratrix of her husband's estate, has been substituted as a respondent in his place and stead.

Compton, 211 F.3d 203, 207-08 (4th Cir. 2000).  In so doing, we confine our review to the grounds upon which the BRB based its decision.  See Grigg v. Dir., OWCP, 28 F.3d 416, 418 (4th Cir. 1994).  As always, we review de novo the BRB's conclusions of law.  See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).

## III.

Eastern presses two primary assignments of error in its petition for review:  (1) that, by applying the fifteen-year presumption to Toler's second claim, the ALJ reopened a final judgment of an Article III court, in contravention of separation of powers principles; and (2) that the ALJ improperly used the fifteen-year presumption to establish that one of the applicable conditions of entitlement had changed since the denial of Toler's first claim.[6]  Because Eastern's first contention

---

[6] In its briefs in this Court, Eastern also contended that the ALJ erred in requiring Eastern to "rule out" either pneumoconiosis or disability due to pneumoconiosis in order to rebut the fifteen-year presumption.  Eastern conceded at oral argument, however, that our recent decision in West Virginia CWP Fund v. Bender forecloses that contention.  See 782 F.3d 129, 143 (4th Cir. 2015) (upholding "rule-out" standard).  Our precedent also readily dispatches Eastern's complaints about the ALJ's consideration of the preamble to the 2000 Final Rule in evaluating the opinions of Drs. Rosenberg and Renn.  See Harman Mining Co. v. Dir., OWCP, 678 F.3d 305, 314-16 (4th Cir. 2012) (concluding that ALJ did not err in invoking regulatory preamble in assessing medical expert's credibility); see also (Continued)

19

requires us to pass on the constitutionality of agency action, we are obliged to first address its second contention. See Marshall v. Stevens People & Friends for Freedom, 669 F.2d 171, 175 (4th Cir. 1981) (resolving statutory challenges to administrative subpoenas before addressing constitutional issues (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring))).

## A.

First, Eastern maintains that utilizing the fifteen-year presumption to show a change in a condition of entitlement pursuant to 20 C.F.R. § 725.309(c) contravenes the Act and the implementing regulations. We disagree.

Both the Act and the regulations show plainly that a coal miner armed with new evidence may invoke the fifteen-year presumption to establish a change in an applicable condition of entitlement. Section 725.309(c) requires a coal miner to show that an "applicable condition[] of entitlement" has changed since the prior denial. "If the applicable condition(s) of entitlement relate to the miner's physical condition," then the miner may rely only on new evidence to show a change in an

---

Westmoreland Coal Co. v. Cochran, 718 F.3d 319, 323 (4th Cir. 2014) (explaining that ALJ "may consider" regulatory preamble "in assessing medical expert opinions").

20

applicable condition of entitlement. See id. § 725.309(c)(4); see also Consol. Coal Co. v. Williams, 453 F.3d 609, 617 (4th Cir. 2006) ("[O]nly new evidence following the denial of the previous claim, rather than evidence predating the denial, can sustain a subsequent claim."). Section 725.202(d) lists the "conditions of entitlement" for a coal miner's claim, including that the miner must have "pneumoconiosis" as it is defined in § 718.202. Section 718.202 identifies several ways a miner can establish pneumoconiosis, including by use of the fifteen-year presumption described in § 718.305. See 20 C.F.R. § 718.202(a)(3) (requiring the decisionmaker to presume that the coal miner has pneumoconiosis "[i]f the presumptions described in § 718.304 or § 718.305 are applicable"). And § 718.305 tracks the fifteen-year presumption revived in 2010 by § 1556(a) of the ACA, which, pursuant to § 1556(c), applies to Toler's second claim because that claim was "filed . . . after January 1, 2005," and was "pending on or after" March 23, 2010. Congress's use of the term "claims" in § 1556(c) "without any qualifying language . . . supports [the] position that amended [§ 921(c)(4)] applies to all claims that comply with [§] 1556(c)'s time limitations, including subsequent claims." Union Carbide Corp. v. Richards, 721 F.3d 307, 314 (4th Cir. 2013) (citations and internal quotation marks omitted).

21

The preamble to the 2000 Final Rule reinforces our textual conclusion that the fifteen-year presumption, together with new evidence, may establish a change in a condition of entitlement. In the preamble, the Secretary rejected a comment suggesting that a coal miner should be obliged to "submit scientific evidence establishing that the change in his specific condition represents latent, progressive pneumoconiosis." See 65 Fed. Reg. at 79,972. Instead, as the Secretary explained, "the miner continues to bear the burden of establishing all of the statutory elements of entitlement, except to the extent that he is aided by [the] two statutory presumptions" in effect at the time the Secretary promulgated the 2000 Final Rule. Id. In other words, the preamble evinces the Secretary's intention that any applicable statutory presumptions may aid a miner's subsequent claim.

Thus, the text of the statute and regulations, as well as the preamble to the 2000 Final Rule, demonstrate that the fifteen-year presumption applies to subsequent claims and may be used to establish a change in an applicable condition of entitlement. Even if we harbored doubts about that conclusion, we would defer to the Director's reasonable and consistent interpretation of the applicable regulations. See Clinchfield Coal Co. v. Harris, 149 F.3d 307, 310 (4th Cir. 1998) (explaining that Director's interpretation of applicable

22

regulation is entitled to "substantial deference" and will be respected unless "plainly erroneous or inconsistent with the express language" thereof (quoting Mullins Coal Co. v. Dir., OWCP, 484 U.S. 135, 159 (1987))).

Contrary to Eastern's suggestion, application of the fifteen-year presumption to a coal miner's subsequent claim does not amount to a "double presumption." See Br. of Petitioner 22. Under the one-element test, the miner is required to "prove, under all of the probative medical evidence of his condition after the prior denial, at least one of the elements previously adjudicated against him." See Lisa Lee Mines, 86 F.3d at 1362; see also 20 C.F.R. § 725.309(c) (requiring the miner to "demonstrate[] that one of the applicable conditions of entitlement . . . has changed"). The fifteen-year presumption merely helps the miner to establish the conditions of entitlement in the second claim. It does not allow the ALJ to "waive finality by presuming that something changed." See Br. of Petitioner 22.

In advancing its preferred interpretation of the relevant statutory and regulatory provisions, Eastern relies on the Secretary's concession in National Mining Ass'n v. Department of Labor that "the most common forms of pneumoconiosis are not latent," see 292 F.3d 849, 863 (D.C. Cir. 2002). That concession, in Eastern's view, is simply inconsistent with

23

utilization of the fifteen-year presumption to establish a change in a condition of entitlement. Although Eastern does not dispute that complicated pneumoconiosis can be latent and progressive, it insists that "simple clinical[] and legal pneumoconiosis[] are neither latent nor progressive," and that the Secretary conceded as much in National Mining Ass'n. See Br. of Pet'r 18.

Put succinctly, we are not "empowered to substitute [our] judgment for that of the [Secretary]" on matters within the Secretary's area of expertise. See Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 288 (4th Cir. 1999); see also Midland Coal Co. v. Dir., OWCP, 358 F.3d 486, 490 (3d Cir. 2004) ("[W]e see no reason to substitute our scientific judgment, such as it is, for that of the responsible agency."). Eastern therefore bears a "heavy burden of showing that the [Secretary] was not entitled to use [her] delegated authority to resolve the scientific question in this manner." Midland Coal, 358 F.3d at 490. Eastern has failed to meet that burden in this proceeding.

The Secretary, after reviewing "all of the medical literature referenced in the [2000 rulemaking] record," located "abundant evidence demonstrating that pneumoconiosis is a latent, progressive disease." See 65 Fed. Reg. at 79,970, 79,971. The discussion of the medical literature in the

24

preamble to the 2000 Final Rule demonstrates that both simple and complicated pneumoconiosis can be latent and progressive. In one study, fourteen of the thirty-three miners who showed progression of pneumoconiosis after leaving the coal mining industry had simple pneumoconiosis. See 65 Fed. Reg. at 79,970; see also P.T. Donnan et al., Progression of Simple Pneumoconiosis in Ex-Coalminers After Cessation of Exposure to Coalmine Dust (Inst. of Occupational Med., Dec. 1997). Another study "reported both small opacities (evidence of simple pneumoconiosis) and large opacities (evidence of complicated pneumoconiosis) in ex-miners who did not show evidence of coal workers' pneumoconiosis after the miners left the industry." 2000 Final Rule, 65 Fed. Reg. at 79,970. Thus, "[t]he medical literature makes it clear that pneumoconiosis" — even in its simple form — "may be latent and progressive." Nat'l Mining Ass'n, 292 F.3d at 863; accord RAG Am. Coal Co. v. OWCP, 576 F.3d 418, 426-27 (7th Cir. 2009) (rejecting suggestion that simple pneumoconiosis can never be progressive or latent absent further exposure to coal dust); Labelle Processing Co. v. Swarrow, 72 F.3d 308, 315 (3d Cir. 1995) (same).

None of Eastern's other contentions against application of the fifteen-year presumption have merit. Although Eastern contends that Toler's second claim is "the same claim" as his first claim "with a new label," see Reply Br. of Pet'r 10, we

25

rejected that very proposition in <u>Lisa Lee Mines</u>. <u>See</u> 86 F.3d at 1362 ("A new black lung claim is not barred . . . by an earlier denial, because the claims are not the same."). That precept also suffices to address Eastern's reliance on principles of finality, to the extent those principles bear on our interpretation of the statutory and regulatory provisions at issue in this matter. Furthermore, <u>Lisa Lee Mines</u> forecloses Eastern's suggestion that Toler should be compelled to prove that the etiology of his condition has changed by comparing the evidence pertaining to Toler's second claim with the evidence underlying the denial of his first claim. <u>See</u> <u>id.</u> at 1361 ("The final decision of the ALJ (or BRB or claims examiner) on the spot is the best evidence of the truth at the time [of the first claim]."); <u>id.</u> at 1363 (explaining that "plenary review of the evidence behind the first claim" is impermissible); <u>accord</u> <u>U.S. Steel Mining Co. v. Dir., OWCP</u>, 386 F.3d 977, 989 (11th Cir. 2004) ("[T]he 'one element' test does not compel a comparison of the evidence associated with the second claim with the evidence presented at the first claim; rather, it mandates a comparison of the second claim's evidence with the <u>conclusions</u> reached in the prior claim.").

Finally, Eastern's suggestion that Toler failed to submit new evidence — postdating the denial of his first claim — as required by 20 C.F.R. § 725.309(c)(4) and our decision in

26

_Williams_, 453 F.3d at 617, is factually incorrect. Toler introduced two positive readings of the July 2008 x-ray, results of two spirometry and arterial blood gas tests, and a letter from his treating physician. In addition, the complete pulmonary examination conducted pursuant to 20 C.F.R. § 725.406(a) yielded another x-ray reading that was positive for pneumoconiosis, spirometry and blood gas tests consistent with total disability, and Dr. Burrell's examination report, in which he opined that Toler's pulmonary disability was caused in part by coal dust exposure. Despite Eastern's intimations to the contrary, that evidence is new. Although Eastern may not regard that evidence as "reliable or probative," see Reply Br. of Pet'r 9, weighing the evidence is for the ALJ, not the court of appeals or appellate counsel.[7]

In sum, Eastern has presented no good reason why the 2010 reenactment of the fifteen-year presumption required the Secretary to revise his subsequent-claim rule or deviate from his longstanding interpretation of that rule. The BRB and ALJ

---

[7] At oral argument and in a post-argument Rule 28(j) letter, Eastern heaved a Hail Mary pass, invoking the principle that courts should construe statutes to avoid "serious [constitutional] doubt[s]" when such a construction is "fairly possible." See _Ashwander_, 297 U.S. at 348 (Brandeis, J., concurring) (quoting _Crowell v. Benson_, 285 U.S. 22, 62 (1932)). That contention also falls short, not least because Eastern has raised no "serious" doubt about the constitutionality of any particular statute or regulation.

"must apply the law in effect at the time of a decision," see Bailey, 721 F.3d at 795, which is exactly what they did here. Accordingly, we reject Eastern's contention that the ALJ contravened either the Act or the applicable regulations by applying the fifteen-year presumption to Toler's second claim.

B.

Having rejected Eastern's statutory argument, we turn to its remaining constitutional contention: that utilization of the fifteen-year presumption to decide Toler's second claim contravened constitutional principles of separation of powers. Eastern contends that the ALJ exercised the Article III "judicial Power" in contravention of the Supreme Court's decision in Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995), by permitting Toler to "relitigat[e] a final judgment of this Court" — namely, our 1998 denial of his petition for review of the BRB's decision affirming the ALJ's denial of Toler's first claim. See Br. of Pet'r 10.

At issue in Plaut was a 1991 amendment to the Securities and Exchange Act of 1934 (the "Exchange Act") adopted in response to the Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991). In Lampf, the Court held that actions under § 10(b) of the Exchange Act "must be commenced within one year after the discovery of the facts constituting the violation and within three years after

28

such violation." 501 U.S. at 364. The Lampf Court overruled several courts of appeals that had applied state statutes of limitations to § 10(b) actions. See Plaut, 514 U.S. at 216. In Lampf's wake, several actions pending in the lower courts were dismissed because of Lampf's holding. See Plaut, 514 U.S. at 214, 216. Six months after the Court decided Lampf, Congress enacted a statute requiring the district courts to reinstate certain § 10(b) actions dismissed based on Lampf and to treat those actions as being timely filed. See Plaut, 514 U.S. at 214-15.

In Plaut, the Court held that the mandatory reinstatement provision of the 1991 amendment contravened the doctrine of separation of powers by requiring the federal courts to reopen closed cases that were not pending on direct appeal. See 514 U.S. at 219, 225. The Court reasoned that the "judicial Power" includes the power to render final judgments in cases, subject to review only by superior courts, and that, by retroactively requiring courts to reopen such judgments, Congress was infringing on that authority. Id. at 218-19.

Simply put, Plaut presents no obstacle to the ALJ's consideration of Toler's second claim under post-ACA legal standards. The ALJ's award of benefits on Toler's second claim did not "retroactively . . . reopen" anything, much less a final judgment of an Article III court. As we explained in Lisa Lee

Mines, a subsequent claim based on new evidence is not the same claim as the one previously denied. See 86 F.3d at 1362. Indeed, pursuant to Lisa Lee Mines, the ALJ was required to, and did, accept the correctness of the administrative denial of Toler's 1993 claim — and, by necessary extension, our 1998 denial of Toler's petition for review. Moreover, as in Lisa Lee Mines, Toler's second claim required the ALJ to assess his pulmonary impairment and its etiologies at the time that claim was filed, an issue which neither was nor could have been litigated in connection with Toler's first claim.

Notably, Eastern has identified no authority extending Plaut to these or similar circumstances. Indeed, in Consolidation Coal Co. v. Maynes, 739 F.3d 323, 326, 328 (6th Cir. 2014), the Sixth Circuit rejected a coal mine operator's contention that Plaut applied to bar a widow's claim for survivor's benefits under § 1556(b) of the ACA, where a federal court of appeals had previously affirmed the Secretary's denial of a prior claim for survivor's benefits under pre-ACA law.[8]

---

[8] Section 1556(b) of the ACA restored to the Act a statutory provision making the payment of benefits to "eligible survivors" automatic upon the death of a coal miner "who was determined to be eligible" for miner's benefits "at the time of his or her death." See 30 U.S.C. § 932(*l*). Like the fifteen-year presumption, the automatic survivor's benefits provision had been repealed by Congress in the 1981 amendments to the Act. See Stacy, 671 F.3d at 381-82 (outlining history of automatic survivor's benefits provision).

<u>Maynes</u> is closer to <u>Plaut</u> than this proceeding is, as the widow in <u>Maynes</u> was not required to show a change in any condition of entitlement. <u>See</u> 20 C.F.R. § 725.309(c)(1) (providing that survivor whose claim was denied under pre-ACA law but would be granted under current law need not show change in condition of entitlement).[9]

In sum, we reject Eastern's suggestion that the ALJ exercised "the judicial Power" when he granted Toler's second claim. The ALJ in this matter simply considered Toler's second claim based on new evidence under the law in effect at the time of the second claim. In doing so, the ALJ did not reopen Toler's first claim; he accepted that decision and "its necessary factual predicate" as correct. <u>See</u> <u>Lisa Lee Mines</u>, 86 F.3d at 1362. And the ALJ certainly did not reopen our 1998 denial of Toler's petition for review.[10]

---

[9] In its reply brief and at oral argument, Eastern encouraged us to reject <u>Maynes</u> on the basis of a two-judge concurrence in a default denial of rehearing en banc in <u>Peabody Coal Co. v. Director, OWCP</u>, No. 12-4366 (6th Cir. Dec. 23, 2014). The operator in <u>Peabody</u> presented the same contention the <u>Maynes</u> court rejected, and the <u>Peabody</u> panel relied on <u>Maynes</u> to deny the petition for review. <u>See</u> 577 F. App'x 469, 470 (6th Cir. 2014), <u>cert. denied</u>, No. 14-1278, __ S. Ct. ___ (Oct. 5, 2015). We have reviewed the <u>Peabody</u> concurrence in the denial of rehearing en banc and deem it unpersuasive.

[10] Although Eastern asserted at oral argument that its constitutional argument relates to separation of powers, it summarily suggested in its opening brief that, by allowing Toler to use the fifteen-year presumption in conjunction with new (Continued)

IV.

Pursuant to the foregoing, we deny Eastern's petition for review.

PETITION FOR REVIEW DENIED

---

evidence to establish a change in a condition of entitlement, the Director denied Eastern due process.  We are satisfied to reject Eastern's scantily developed due process contention.  As legislation "adjusting the burdens and benefits of economic life," § 1556(a) enjoys "a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."  See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 20 (1976) (rejecting coal company's due process challenge to fifteen-year presumption).