<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 10-1068**

─────────────

SEWELL COAL COMPANY,

    Petitioner,

  v.

WILLIAM O. DEMPSEY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

    Respondents.

─────────────

On Petition for Review of an Order of the Benefits Review Board.
(09-0151-BLA)

─────────────

Argued: March 25, 2011      Decided: May 19, 2011

─────────────

Before NIEMEYER, DUNCAN, and AGEE, Circuit Judges.

─────────────

Affirmed in part, vacated in part, and remanded with
instructions by unpublished per curiam opinion.

─────────────

**ARGUED:** Douglas Allan Smoot, JACKSON KELLY, PLLC, Charleston,
West Virginia, for Petitioner. John C. Eller, WASHINGTON AND
LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia; Barry H.
Joyner, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for
Respondents. **ON BRIEF:** Kathy L. Snyder, JACKSON KELLY, PLLC,
Charleston, West Virginia, for Petitioner. Timothy C.
MacDonnell, L. Lucy Brandon, WASHINGTON AND LEE UNIVERSITY
SCHOOL OF LAW, Black Lung Legal Clinic, Lexington, Virginia, for
Respondent Dempsey. M. Patricia Smith, Solicitor of Labor, Rae
Ellen James, Associate Solicitor, Patricia M. Nece, Counsel for

Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this petition for review, Sewell Coal Company contends, among other things, that the Benefits Review Board ("the Board") erred in affirming the decisions of the Administrative Law Judge ("the ALJ") who, after finding respondent William Dempsey's second claim for benefits timely filed, awarded Black Lung benefits. For the reasons set forth below, we affirm the Board's Decision and Order of November 25, 2009 as to the timeliness of Dempsey's claim. However, because the ALJ failed adequately to explain his reasoning in evaluating opinion evidence, we vacate the November 25, 2009 and March 31, 2005 Decisions and Orders of the Board as to the existence of pneumoconiosis and total disability, and remand for further proceedings.

I.

This case comes before the Court for the second time. As we previously discussed:

> William Dempsey worked in the coal mine industry for approximately twenty-three years. He worked specifically for Sewell Coal for more than eleven years, most recently as a belt repairman. After leaving Sewell Coal, Dempsey worked for Dale and Tina Coal Company for approximately three months and for DC & M Coal Company for nearly five months, before retiring from the coal mine industry in 1989. Dempsey filed his first claim for benefits under the [Black Lung Benefits Act, 30 U.S.C. §§ 901 et seq, ("the BLBA")] on April 27, 1989. That claim was denied on

3

August 15, 1989, because the evidence did not then
establish that Dempsey was totally disabled by
pneumoconiosis.

* * *

. . . Dempsey filed his second claim for Benefits
under the [BLBA] on February 8, 2001.  The district
director awarded benefits under Dempsey's claim on May
29, 2002, and an [ALJ] subsequently reviewed the
claim, finding Dempsey totally disabled substantially
due to pneumoconiosis.  Having also found the claim
timely after concluding that the statute of
limitations did not apply to subsequent claims for
benefits, the ALJ issued a decision awarding benefits.
The [Board] vacated the ALJ's decision awarding
benefits and remanded for further consideration on
evidentiary issues.  The ALJ again awarded benefits
and the Board affirmed.  Sewell Coal Company . . . the
mine operator responsible for paying benefits, [then]
petition[ed] for review of the Board's Order.

Sewell Coal Co. v. Director, O.W.C.P., 523 F.3d 257, 258 (4th

Cir. 2008) (internal citation and footnote omitted).  After

vacating the ALJ's timeliness determination, id. at 259, we

remanded the case for further proceedings, but without

adjudicating the merits as to the finding of pneumoconiosis.

Id.  On remand, the ALJ again awarded benefits to Dempsey.

Thereafter, Sewell appealed to the Board, which affirmed the

ALJ's decision, two votes to one.

Sewell Coal now brings the instant petition, arguing the

ALJ incorrectly determined that Dempsey's 2001 application for

4

benefits was timely filed and failed to explain why he credited certain expert opinions over others.[1]

## II.

"When we review a claim for benefits under the BLBA, '[w]e undertake an independent review of the record, as in the place of the Board, to determine whether the ALJ's factual findings are based on substantial evidence in the record.'" Sewell Coal Co., 523 F.3d at 259 (quoting Toler v. E. Associated Coal Co., 43 F.3d 109, 114 (4th Cir. 1995)). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it is "more than a mere scintilla." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "In determining whether substantial evidence

---

[1] Sewell Coal also raises a host of evidentiary issues, including that the ALJ erred by: (i) finding Dempsey showed good cause to submit late evidence; (ii) improperly denying Sewell Coal's rights to due process and a fair hearing by requiring it to disclose prematurely its affirmative case and by refusing to allow it to rely on the medical reports of its choice; (iii) failing to find various exhibits admissible under the "good cause" exception of the amended regulations; (iv) excluding Sewell Coal's rebuttal evidence and certain treatment records. For the reasons set forth in the Board's Decisions and Orders, we find that the ALJ did not so err. We therefore confine our discussion to Sewell Coal's arguments concerning the timeliness of Dempsey's second claim for benefits and the ALJ's evaluation of opinion evidence.

supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." Id. at 528 (citing Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997)).

III.

A.

We first consider whether Dempsey timely filed his second claim for benefits on February 8, 2001.

A letter submitted to the West Virginia State Board of Rehabilitation in July 1989 by Dr. J. David Brown, Dempsey's treating physician, reflects that Dr. Brown informed Dempsey of his pneumoconiosis diagnosis in February of that year.[2] On October 17, 1989, Dr. Brown sent a follow-up letter to the Board indicating that, during Dempsey's August 29, 1989 office visit, Dr. Brown told Dempsey "that I felt he was totally and

---

[2] While it is true that Dr. Brown's July 1989 letter indicates he "advised [Dempsey] to stop working in coal mines due to his diagnosis of COPD due to pneumoconiosis," it does not indicate that Dempsey was totally disabled as a result of pneumoconiosis. J.A. 57. In any event, Sewell Coal concedes that "Brown's first letter is insufficient by itself to render the claim untimely. . . ." Br. for Petitioner at 20; see Consolidation Coal Co. v. Williams, 453 F.3d 609, 616-18 (4th Cir. 2006).

6

permanently disabled." J.A. 60. Sewell Coal contends[3] that these letters, considered together, establish that Dr. Brown communicated to Dempsey that he was totally disabled due to pneumoconiosis in 1989. Thus, Sewell Coal's argument goes, because Dempsey did not file his second claim before 1992, he failed to comply with the three-year limitations period and his claim should be dismissed as untimely. We disagree.

20 C.F.R. § 725.308(a) provides that "[a] claim for benefits . . . shall be filed within three years after a medical determination of total disability due to pneumoconiosis which has been communicated to the miner or a person responsible for the care of the miner." All claims are presumed timely, absent evidence to the contrary. 20 C.F.R. § 725.308(c). Furthermore, as Sewell Coal acknowledges, we have held a finding that a claimant is not totally disabled due to pneumoconiosis in a prior claim renders any earlier medical determination to the contrary insufficient to trigger the statute of limitations. See Consolidation Coal Co. v. Williams, 453 F.3d 609, 618 (4th

---

[3] At argument, Sewell Coal appeared to argue that Dempsey had been informed that he was disabled due to pneumoconiosis in 1989. At our request, Dempsey filed a supplemental letter brief, which indicates that while Dempsey may have been informed that he suffered from pneumoconiosis, there was no conveyance of the fact that he was totally disabled due to that condition. See No. 10-1068, Doc. # 45 at 2; see also 20 C.F.R. § 718.204 (defining "total disability").

Cir. 2006) ("[A] medical determination later deemed to be a misdiagnosis of pneumoconiosis by virtue of a superseding denial of benefits cannot trigger the statute of limitations for subsequent claims.").

Here, Dr. Brown's July 1989 letter was followed by the denial of Dempsey's 1988 black lung claim, which, under Williams, rendered Dr. Brown's February 1989 pneumoconiosis diagnosis a misdiagnosis. See 453 F.3d at 616. Moreover, even if we were to consider the first letter, it fails to specify which of the myriad conditions listed by Dr. Brown caused Dempsey's disability. See J.A. 56-58 (explaining Dempsey "is totally and permanently disabled from any type of gainful employment due to his diagnoses stated above," which apparently included B.P.H. with secondary acute prostatitis and intercostal neuritis and radiculitits) (emphasis added).

Consideration of the second letter does not render Dempsey's second claim for benefits untimely. As the Board reasoned:

> In weighing [Dr. Brown's letters], the administrative law judge permissibly found that none of Dr. Brown's statements established that Dr. Brown specifically communicated to claimant that he was totally disabled due [to] pneumoconiosis. . . .
>
> As noted by the administrative law judge, although Dr. Brown wrote, in the first part of his October 1989 letter, that he had informed claimant that he was totally disabled, the doctor "did not indicate the cause of the disability was due to pneumoconiosis."

8

> Moreover, the administrative law judge reasonably found it was unclear from Dr. Brown's second statement in the October 1989 letter whether he had <u>communicated to claimant</u> his "feeling" that claimant was totally disabled as a result of severe shortness of breath and COPD.

J.A. 708-09 (internal citations omitted).

Simply put, we see no reason to disagree with the Board's analysis. Because Dr. Brown's letters fail to establish that Dempsey was informed that he was disabled <u>due to</u> pneumoconiosis, Sewell Coal has not rebutted the presumption that Dempsey's claim was timely filed.

B.

Sewell Coal contends further that although Drs. Joseph J. Renn III, Robert A.C. Cohen, and Donald L. Rasmussen each reviewed excluded evidence, the ALJ engaged in a prohibited selective analysis of opinion evidence by discrediting Dr. Renn's assessment while finding the opinions of Drs. Cohen and Rasmussen well-reasoned.[4] In Sewell Coal's view, "[i]n lieu of rational, detailed explanation, [the ALJ] simply parroted the doctors' findings in his decision without discussing how or why the determinations of those doctors are more convincing than

---

[4] Sewell Coal also argues that the ALJ failed to explain why he credited Dr. Dominic Gaziano's opinion and failed to consider Dr. John A. Bellotte's assessment. We have reviewed the record and, for the reasons stated by the Board in its June 28, 2004 Decision, find no error by the ALJ.

9

[those of] the other experts." Br. for Petitioner at 43. In other words, Sewell Coal contends the ALJ failed adequately to explain his reasoning as required by the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A) ("the APA").

With respect to Sewell Coal's argument that the Rasmussen opinion should be discredited because Dr. Rasmussen considered excluded evidence, there is substantial evidence in the record to support the ALJ's finding that Dr. Rasmussen did not rely on the inadmissible evidence in forming his opinion. The ALJ summarized the evidence used by Dr. Rasmussen and concluded that while he performed an inadmissible, independent review of an x-ray, he in fact based his medical opinion on the interpretation of that x-ray by Dr. Manu N. Patel – an interpretation that was admitted into evidence. We find no error in this determination by the ALJ.

We cannot say the same, however, for the ALJ's evaluation of the expert opinions of Drs. Cohen and Renn, which fails to provide adequate explanation for his conclusions. See 5 U.S.C. § 557(c)(3)(A); see also Barren Creek Coal Co. v. Witmer, 111 F.3d 352, 354 (3d Cir. 1997) ("The absence of explanation in certain portions of the ALJ's Decision and Order renders meaningful review impossible by this court, as we are unable to determine the analytic process behind the result."). As correctly explained in the Board dissent:

10

The evidentiary limitations of Section 725.414 were intended to level the playing field between operators and claimants and to ensure fairer and more equitable evaluations of black lung claims. The regulations further guard against the consideration of excess medical evidence by providing that medical reports be based only on admissible evidence. As the regulations are silent concerning how an administrative law judge should evaluate a medical report which contains references to evidence that has been excluded under the limitations, the Board has held that the disposition of this issue is a matter within the discretion of the administrative law judge. In exercising this discretion, however, the administrative law judge must reconcile his obligations under Section 725.414(a)(2)(i)[ and] (a)(3)(i), with his statutory obligation to consider all of the relevant and material evidence bearing upon the existence of pneumoconiosis. Because the administrative law judge focused on the number of inadmissible exhibits Drs. Renn and Cohen had each reviewed, without considering what effect, if any, the inadmissible evidence had on the physicians' opinions, I would hold that the administrative law judge failed to sufficiently analyze the medical opinion evidence or explain his conclusion that Dr. Cohen's opinion is entitled to greater weight than that of Dr. Renn.

J.A. 676–77 (internal citations omitted).

Tasked with evaluating conflicting medical opinions from two doctors who reviewed excluded evidence, the ALJ discredited Dr. Renn's opinion in favor of Dr. Cohen's.[5] In so doing, the

---

[5] Sewell Coal additionally contends that the ALJ mischaracterized Dr. Renn's opinion by noting "Renn concluded that Claimant does not have coal workers' pneumoconiosis because the chest x-rays revealed irregular opacities and there were no opacities in the upper lung zones. . . . every physician [who] noted the location of the opacities on their x-ray interpretations found opacities in all six lung zones." Brief for Petitioner at 27 (quoting J.A. 660) (added emphasis omitted). The ALJ's statement is misleading, if not erroneous. (Continued)

11

ALJ focused on the quantity of excluded evidence each doctor reviewed, rather than on the extent to which each opinion relied on the excluded materials.  To allow an ALJ to discredit one opinion and to credit another based on the percentage of excluded evidence considered by each doctor would, at bottom, be to allow nothing more than a "headcount" of evidence.  And of course, ALJs are not permitted to decide a disputed issue of medical fact by a headcount.  See Adkins v. Dir., O.W.C.P., 958 F.2d 49, 52 (4th Cir. 1992); see also Stalcup v. Peabody Coal Co., 477 F.3d 482, 484 (7th Cir. 2007) ("[W]hen an ALJ is faced with conflicting evidence from medical experts, he cannot avoid the scientific controversy by basing his decision on which side has more medical opinions in its favor.  This unreasoned approach, which amounts to nothing more than a mechanical nose

---

In his first opinion, the ALJ stated "Gaziano is the only physician who found opacities in the lower four lung zones on one x-ray, but he also found opacities in six lung zones on another x-ray." J.A. 556 (emphasis added).  Hence, although all the x-ray evidence did not note opacities in six lung zones, the ALJ's observation that all physicians who noted opacities found opacities in all six lung zones is not entirely inaccurate. But, drawing on this misleading statement, the ALJ erred by finding "that Dr. Renn's opinion [that there were no opacities in the upper lung zones] is not reasoned because it is not based on the chest x-ray evidence in the record." J.A. 660.  After all, one of Gaziano's x-rays does suggest the upper lung zones were free from opacities.  See J.A. 53.  The ALJ therefore should not rely on his statement concerning the number of physicians who found opacities on remand.

12

count of witnesses, would promote a quantity-over-quality approach to expert retention, requiring parties to engage in a race to hire experts to insure victory.") (internal quotation and citations omitted).

When an ALJ, in weighing evidence, merely tallies the quantity of excluded exhibits opposing experts reviewed, just as when he counts the number of experts on a given side of a medical dispute, the ALJ fails to consider the merits of the medical evidence before him. We cannot tell from the ALJ's decision how, if at all, the excluded evidence affected the opinions of either Dr. Renn or Dr. Cohen. Moreover, setting aside the CT scan interpretations reviewed by Dr. Cohen, it is clear from the ALJ's decision that both physicians reviewed the same number of admissible x-rays. But the ALJ failed to give a reasoned explanation of how all this evidence affected the respective medical opinions.

The ALJ thus committed reversible error in failing to "determine whether either physician actually relied upon, rather than merely reviewed, evidence which is not in the record." J.A. 677. Whether or not Dr. Cohen's or Dr. Renn's opinion finds support in admitted evidence — a question we reserve for the ALJ — the ALJ failed to provide sufficient explanation for his acceptance of Dr. Cohen's opinion and the rejection of Dr.

13

Renn's.[6]  Because this error affected not only the ALJ's finding as to the existence of pneumoconiosis but also as to the existence of total disability, we vacate both conclusions.

Having agreed with the Board's dissent, we now adopt, in part, its suggested remand instructions.  On remand, the ALJ should reconsider the opinions of Drs. Renn and Cohen and determine whether their opinions are based in any material part on excluded evidence.  If the ALJ determines an opinion has improperly relied on evidence outside the record, he may consider whether to redact the excluded materials, ask the physician to submit a new report, evaluate the extent of a

_____

[6] The ALJ's failure to explain why he credited certain evidence extended beyond his treatment of Drs. Renn and Cohen. Having reviewed the record, we find the ALJ failed adequately to explain why he found the opinion of Dr. Mark Wantz to be well-reasoned.  See, e.g., Hicks, 138 F.3d at 532 n.9 ("In weighing opinions, the ALJ is called upon to consider their quality, taking into account, among other things, the opinions' reasoning and detail of analysis.") (citation and internal quotations omitted).  Furthermore, in analyzing the opinions of Drs. Jerome Wiot, Michael Alexander, and Patel, the ALJ appears incorrectly to have placed controlling weight on which viewpoint, Dempsey's or Sewell Coal's, found more supporters.  Moreover, because Dr. Wiot, like Drs. Alexander and Patel, is a dually qualified physician, the ALJ's conclusory statement that dually qualified physicians' opinions are entitled to more weight fails to explain why he gave greater weight to Alexander's and Patel's opinions.  While a closer question than that presented with respect to Drs. Cohen and Renn, we find the ALJ's evaluation of the Wantz, Wiot, Alexander, and Patel opinions lacking and accordingly vacate those determinations.  On remand, the ALJ should consider more explicitly the opinion of Dr. Wantz and reweigh the opinions of Drs. Wiot, Alexander, and Patel accordingly.

14

physician's reliance upon the excluded evidence, or, as a last resort, exclude the report from the record. Additionally, before reweighing the opinion evidence described herein, the ALJ is directed to reconsider more fully the opinion of Dr. Wantz. The ALJ shall then "reweigh all of the medical opinion evidence of record and determine whether it supports [] finding[s] of the existence of pneumoconiosis [and total disability] under Section[s] 718.202(a)(4) [and 718.204]." J.A. 678.

IV.

For the foregoing reasons, we affirm the Board's decision as to the timeliness of Dempsey's application and as to the other issues raised by Sewell Coal Company as reflected in footnote 1. We vacate the Board's decision as to the findings of pneumoconiosis and disability and remand this case for further proceedings in conformity with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

15