**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 20-1888**

———————————

ISLAND CREEK COAL COMPANY,

        Petitioner,

      v.

DANIEL LOONEY; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

———————————

On Petition for Review of an Order of the Benefits Review Board.  (19-0266 BLA)

———————————

Argued:  October 26, 2023                  Decided:  April 24, 2024

———————————

Before GREGORY and AGEE, Circuit Judges, and Robert S. BALLOU, United States District Judge for the Western District of Virginia, sitting by designation.

———————————

Petition for review granted; Benefits Review Board decision vacated and remanded by unpublished opinion. Judge Ballou wrote the opinion in which Judge Gregory and Judge Agee joined.

———————————

**ARGUED:** William Steele Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Brad Anthony Austin, WOLFE, WILLIAMS & REYNOLDS, Norton, Virginia; William M. Bush, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Jeffrey R. Soukup, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Elena S. Goldstein, Deputy Solicitor, Barry H. Joyner, Associate Solicitor, Jennifer L. Feldman, Deputy Associate Solicitor, Gary K.

Stearman, Counsel for Appellate Litigation, Cynthia Liao, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, for Respondent Director, Office of Workers' Compensation Programs.

———————————

Unpublished opinions are not binding precedent in this circuit.

BALLOU, District Judge:

Daniel Looney applied for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* ("Act"), claiming that he suffered from coal dust induced pneumoconiosis as a result of his work as a coal miner. The Administrative Law Judge ("ALJ") considered conflicting medical evidence and determined that Looney was entitled to benefits. The Benefits Review Board ("BRB") affirmed the ALJ's decision. Island Creek Coal Company ("Island Creek") petitions this court for review of the BRB's decision affirming the ALJ's award of benefits. Island Creek raises various challenges to the ALJ's findings of both clinical and legal pneumoconiosis, and the BRB's conclusion that alleged errors by the ALJ were harmless. Island Creek also argues that the ALJ's decision violated the Appointments Clause in light of *Lucia v. SEC*, 585 U.S. 237 (2018), and that the BRB erred in deeming Island Creek's Appointments Clause claim forfeited. We conclude that Island Creek forfeited its Appointments Clause claim by failing to timely raise it. We find reversible error in the BRB's benefits analysis; accordingly, we grant the petition for review, vacate the BRB's order, and remand to the BRB for further proceedings.

I.

A.

Daniel Looney worked in coal mines from 1980 until 1994. It is undisputed that he has more than 10 but less than 15 years of coal mine employment for purposes of the Act. The ALJ found that Looney "ha[d] a 50 pack year smoking history" for purposes of the Act. J.A. 517.

Looney was diagnosed with chronic obstructive pulmonary disease by 2011 and in May of that year was diagnosed with a Mycobacterial Avium Complex ("MAC") infection. From 2011 through 2014, Looney underwent multiple lung surgeries, including a right upper lobectomy, right lower lobe segmentectomy, and a left upper lobectomy. Looney was eventually placed on chronic oxygen therapy and inhaler treatment. It is undisputed that he has advanced lung disease and is totally disabled. Island Creek disputes that Looney has pneumoconiosis and, if he does, that his pneumoconiosis is a substantially contributing cause of his total disability.

B.

To establish entitlement to living miner's benefits under the Act, Looney must prove: "(1) that he has pneumoconiosis, in either its clinical or legal form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015) (internal quotation marks omitted); *see* 20 C.F.R. §§ 718.204(c)(1), 725.202(d)(2). Under the Act, "pneumoconiosis" is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment," and includes both "clinical" and "legal" pneumoconiosis. 20 C.F.R. § 718.201(a). "'Clinical pneumoconiosis' consists of those diseases recognized by the medical community as pneumoconioses, *i.e.,* the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment."

4

20 C.F.R. § 718.201(a)(1). "'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). "Arising out of coal mine employment" means "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

Looney bears the burden to establish the existence of pneumoconiosis by a preponderance of the evidence. 20 C.F.R. § 725.103. Pneumoconiosis may be established by chest x-rays, biopsy or autopsy, or medical opinion evidence. *Id.* at § 718.202(a). The ALJ must weigh all of the evidence together when determining whether Looney established the presence of pneumoconiosis. *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 249 (4th Cir. 2016).

C.

The ALJ entered a decision awarding benefits to Looney. The ALJ determined that Looney has a totally disabling respiratory impairment, noting that all spirometry measurements show disabling results and no physicians in the record argue otherwise.

When evaluating whether Looney established the existence of clinical pneumoconiosis, the ALJ reviewed conflicting medical evidence submitted by Looney and Island Creek, including chest x-ray interpretations, CT scans, narrative x-ray interpretations, pathology reports, and medical opinions. The ALJ considered each category of medical evidence separately, and then analyzed the evidence together as a whole to determine if Looney established clinical pneumoconiosis by a preponderance of the evidence. The ALJ reviewed eleven substantive chest x-ray interpretations; six that

5

diagnosed pneumoconiosis and five that did not. The ALJ found that the physicians interpreting x-rays as positive for pneumoconiosis had "relatively uniform x-ray interpretations" that routinely found emphysema, bullae, and low-level profusion. J.A. 533. The ALJ noted differences in the positive interpretations but found the x-ray readings uniform as a whole. Conversely, the ALJ found that the x-ray interpretations submitted by Island Creek reach differing conclusions and have contradictions which "hurt [Island Creek's] case." J.A. 534. The ALJ gave the positive x-ray interpretations more weight than those submitted by Island Creek and found that "the x-ray evidence, when evaluated as a whole, supports a finding that [Looney] has clinical pneumoconiosis." *Id.*

The ALJ evaluated the CT scan interpretations in the record and found them largely silent on clinical pneumoconiosis. The ALJ determined that on the whole the CT scan interpretations do not support a finding of clinical pneumoconiosis. J.A. 535.

The ALJ found the narrative x-ray interpretations in the record "puzzling," and noted that they do not specifically diagnose pneumoconiosis directly. The ALJ determined that the narrative x-rays cut against a finding of pneumoconiosis. *Id.*

The ALJ reviewed the pathology reports in the record and found that they strongly support a finding of pneumoconiosis, noting that Looney had coal dust induced fibrosis in a biopsy slide, with pigment laden macrophages, and anthracosis. J.A. 536. The ALJ concluded that the pathology reports find that Looney has pneumoconiosis and he gave the pathology reports significant weight. *Id.*

The ALJ reviewed medical opinions from four physicians, Drs. Habre and Akhrass who diagnosed clinical pneumoconiosis, and Drs. Spagnolo and Jarboe who did not. The

6

ALJ found the two medical opinions that did not diagnose pneumoconiosis problematic and unsupported by the record. J.A. 537–38. The ALJ determined that the reliable medical opinion evidence supported a finding of clinical pneumoconiosis. J.A. 538.

The ALJ considered the medical evidence collectively and concluded that Looney had clinical pneumoconiosis, writing,

> I am specifically persuaded by the pathology reports in this case, which identified pigment bearing macrophages, anthracosis, and a coal dust nodule. These findings, *coupled with the ILO x-ray interpretations,* convince me by a preponderance of the evidence that Claimant has clinical pneumoconiosis.

*Id.* (emphasis added).

The ALJ also determined that Looney's MAC infection qualifies as legal pneumoconiosis, relying on Dr. Akhrass' opinion that pneumoconiosis predisposed Looney to the MAC infection. J.A. 542. The ALJ applied the rebuttable presumption that a miner who has 10 or more years of coal mine employment and suffers from pneumoconiosis is entitled to a presumption that the pneumoconiosis arose from his coal mine employment. J.A. 542–33; 20 C.F.R. § 718.302. The ALJ determined that Looney established that his total disability was caused by his legal pneumoconiosis. However, the ALJ did not find sufficient evidence to establish that Looney's total disability was caused by clinical pneumoconiosis. J.A. 543. The ALJ awarded benefits based upon Looney's totally disabling legal pneumoconiosis. *Id.*

## D.

On appeal to the BRB, Island Creek raised, for the first time, a constitutional challenge under the Appointments Clause, claiming that the ALJ had not been properly

appointed in light of *Lucia*. The BRB concluded that Island Creek forfeited its Appointments Clause argument by failing to raise it before the ALJ. J.A. 547.

Island Creek also challenged, among other things, the ALJ's evaluation of the substantive x-ray interpretations in determining that Looney established clinical pneumoconiosis. Island Creek asserted that the ALJ's decision to credit the positive x-ray interpretations as "relatively uniform" and give them more weight than the negative x-ray interpretations was arbitrary, irrational, and unsupported by substantial evidence. Island Creek argued that the positive x-ray readings were not uniform and the ALJ failed to consider inconsistent diagnoses within the positive x-ray readings.

The BRB affirmed the ALJ's conclusion that Looney had clinical pneumoconiosis, stating, "[b]ecause it is supported by substantial evidence, we affirm the [ALJ's] finding that the biopsy evidence establishes claimant has clinical pneumoconiosis and outweighs the contrary evidence of record." J.A. 550. The BRB declined to address Island Creek's allegations of error regarding the positive x-ray interpretations, stating in a footnote,

> Because we affirm the [ALJ's] finding that the biopsy evidence establishes clinical pneumoconiosis and outweighs the contrary evidence, any errors in his crediting the positive x-ray readings and the opinions of Drs. Habre and Akhrass are harmless.

J.A. 550 n.6.

The BRB also affirmed the ALJ's findings that Looney is totally disabled and that he was entitled to the presumption that his clinical pneumoconiosis arose out of his coal mine employment. J.A. 550–52.

8

The BRB diverged from the ALJ's conclusions regarding legal pneumoconiosis. The BRB determined that it was unnecessary to find that Looney's MAC infection was legal pneumoconiosis. J.A. 556. The BRB instead found that the evidence established a causal relationship between Looney's MAC infection, his clinical pneumoconiosis, and his total disability. Thus, the BRB found that Looney was totally disabled as a result of his clinical pneumoconiosis and affirmed the ALJ's award of benefits. J.A. 556–58.

## II.

We review an ALJ's decision that has been affirmed by the BRB to determine whether it is in accordance with the law and supported by substantial evidence. *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 805 F.3d 502, 510 (4th Cir. 2015). Our review is limited to considering "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [BRB] and ALJ are rational and consistent with applicable law." *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 668 (4th Cir. 2017) (internal quotation marks omitted). We review the legal conclusions of the BRB and the ALJ de novo. *Edd Potter Coal Co. v. Dir., Office of Workers' Comp. Programs*, 39 F.4th 202, 206 (4th Cir. 2022). In so doing, our review is confined exclusively to the grounds upon which the BRB based its decision. *E. Associated Coal*, 805 F.3d at 510.

## III.

### A.

As a threshold matter, we first address Island Creek's contention that the ALJ who issued the decision in Looney's case was not properly appointed in accordance with the

Constitution's Appointments Clause. The Supreme Court held in *Lucia* that one who makes a *timely* and proper challenge to the constitutional validity of the appointment of the hearing ALJ is entitled to a new hearing before a different (and properly appointed) ALJ. 585 U.S. at 251–52 (emphasis in original). Here, Island Creek did not raise this issue before the ALJ hearing the case, but rather, asserted the Appointment Clause challenge for the first time on appeal to the BRB.

We recently confirmed that the black lung regulations require exhaustion of a legal challenge to the appointment of the ALJ before both the ALJ and BRB. *Edd Potter Coal*, 39 F.4th at 207–10. Applying that rule, we determined that an employer forfeited its Appointments Clause challenge under *Lucia* by failing to timely raise the issue before the ALJ and the BRB, and instead addressing it for the first time on remand to the ALJ. *Id.* at 205, 207, 210–11.

The employer in *Edd Potter Coal* asked us to excuse its forfeiture under the futility exception, arguing that exhaustion before the ALJ was futile because the ALJ could not grant the relief sought. The employer also argued that its forfeiture should be excused because *Lucia* was an intervening change in the law. We disagreed on both points, finding that exhaustion was not futile because both the ALJ and the BRB can hear Appointments Clause challenges and both can grant the requested relief of reassignment to a properly appointed ALJ. *Id.* at 211. We also rejected the intervening-law exception argument, noting that it only applies when an issue was previously not available. *Id.* We held that Appointments Clause challenges were available before the Supreme Court decided *Lucia* and that many black lung litigants pressed the point before *Lucia*; thus, forfeiture was not

10

excused. *Id.* at 212 ("Raising it did not require clairvoyance.  It only required awareness, and this is what Edd Potter lacked.").

Here, it is undisputed that Island Creek raised the Appointments Clause issue for the first time before the BRB and has, thus, forfeited this challenge because of its failure to raise it with the ALJ. The only remaining issue is whether Island Creek's forfeiture should be excused. Island Creek argues that exhaustion would have been futile, arguing that the ALJ lacked authority to resolve the Appointments Clause issue. This argument was rejected in *Edd Potter Coal* and we will not reconsider it here. *Id.* at 211 ("Both ALJs and the [BRB] can grant the requested relief of reassignment to a different ALJ.").

Island Creek also argues that its forfeiture should be excused because the agency inconsistently required exhaustion of Appointments Clause challenges prior to its decision in *Kiyuna v. Matson Terms., Inc.*, BRB No. 19-0103, 2019 WL 2881243 (B.R.B. June 25, 2019). However, as we noted in *Edd Potter Coal*, "[b]efore the ALJ, issue exhaustion is plainly one of the rules of the game." 39 F.4th at 208. Island Creek was on notice that it must raise all issues before the ALJ or risk forfeiture. Indeed, "both ALJs and the [BRB] did in fact grant that relief in 'legions' of other black lung cases when the Appointments Clause challenge was 'properly raised.'" *Edd Potter Coal*, 39 F.4th at 211 (quoting *Joseph Forrester Trucking v. Dir., Office of Workers' Comp. Programs*, 987 F.3d 581, 591–92 (6th Cir. 2021)). Further, Island Creek acknowledged during oral argument that it raised Appointments Clause issues before ALJs in other cases and it was not prevented from doing so here. Island Creek's assertion that it avoided raising the Appointments Clause issue so as not to "annoy" the ALJ suggests that Island Creek made a strategic decision not

11

to advance the issue before the ALJ. *See Stokes v. Stirling*, 64 F.4th 131, 141 (4th Cir. 2023) (declining to excuse forfeiture where party made a conscious, strategic decision not to litigate the issue on appeal).

Overall, Island Creek's arguments to excuse its forfeiture in this case are unpersuasive. We affirm the BRB's conclusion that Island Creek forfeited its Appointments Clause challenge.

B.

Island Creek objects to the BRB's holding that any error in the ALJ's analysis of the substantive x-ray interpretations was harmless. Island Creek notes that the ALJ relied upon pathology evidence "coupled with" the x-ray interpretations to find clinical pneumoconiosis by a preponderance of the evidence. Island Creek argues that it is unknown whether the ALJ would reach the same conclusion if the x-ray evidence did not support a finding of clinical pneumoconiosis. We agree that the ALJ's clinical pneumoconiosis analysis was based on both the x-ray and pathology evidence, and an alleged error by the ALJ in assessing the x-ray evidence would not be harmless.

Administrative adjudications are subject to the same harmless error rule that generally applies to civil cases. *Sea "B" Mining*, 831 F.3d at 253. Reversal on account of error is not automatic but requires a showing of prejudice. *Id.* The harmless error rule considers the likelihood that the result would have been different absent error. *Id.* at 253–54.

When evaluating clinical pneumoconiosis, the ALJ was required to consider each category of evidence separately and then weigh the different types of evidence together to

determine whether a preponderance of *all* the evidence establishes pneumoconiosis. *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208–09 (4th Cir. 2000); 30 U.S.C. §923(b). "Although the regulations group the forms of permissible evidence into discrete categories, an ALJ must weigh all of the evidence together when determining whether the miner has established the presence of pneumoconiosis." *Sea "B" Mining*, 831 F.3d at 249. Here, the ALJ properly evaluated each category of evidence separately and then weighed the evidence together as a whole. When considering the evidence collectively, the ALJ explicitly relied on both the pathology reports and the weight of the positive x-ray interpretations to find clinical pneumoconiosis by a preponderance of the evidence. *See* J.A. 538 ("I am specifically persuaded by the pathology reports in this case…[t]hese findings, when coupled with the ILO x-ray interpretations, convince me by a preponderance of the evidence that [Looney] has clinical pneumoconiosis.").

On appeal, the BRB affirmed the ALJ's finding of clinical pneumoconiosis, but based its holding solely on the pathology evidence. The BRB held that the biopsy evidence "outweigh[ed] contrary evidence of record," and declined to consider any error in the ALJ's analysis of the x-ray interpretations. The BRB's inaccurate inference that the ALJ relied solely upon biopsy evidence to establish clinical pneumoconiosis is problematic for several reasons. The BRB was charged with reviewing the ALJ's findings of fact and conclusions of law and was not at liberty to affirm the ALJ's conclusion on an alternate ground. *Edd Potter Coal Co.*, 39 F.4th at 208 (the BRB "is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it…the [BRB] is only authorized to review the conclusions of law on which the decision or order appealed from

13

was based.") (internal quotations and citations omitted); *See v. Washington Metro. Area Transit Auth.*, 36 F.3d 375, 382 (4th Cir. 1994) ("Regardless of its perception of the appropriate inferences arising from the evidence, the BRB cannot … substitute its own fact findings and judgment for that of the ALJ.") (citing *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944–45 (5th Cir. 1991)).

Further, we have previously rejected the idea that if the evidence relevant to one subsection of evidence supports a finding of pneumoconiosis, other evidence bearing on a different subsection can be ignored. *Compton*, 211 F.3d at 208–09; *see Consolidation Coal Co. v. Held*, 314 F.3d 184, 186–87 (4th Cir. 2002) (error for ALJ to rely solely on medical opinion evidence without weighing all categories of evidence together). In *Compton*, we clarified that while one category of evidence may be sufficient to establish pneumoconiosis, the ALJ must still weigh all categories of evidence together. 211 F.3d at 208–09. Under this framework, the BRB was obligated to consider all categories of evidence the ALJ relied upon to find clinical pneumoconiosis.

Given these circumstances, the BRB incorrectly determined that any error by the ALJ in evaluating the positive x-ray interpretations was harmless. If, on review, the BRB found that the ALJ's analysis of the positive x-ray interpretations as "uniform" was irrational and arbitrary, it would eliminate the ALJ's sole basis to credit the positive x-ray interpretations over the negative x-ray interpretations. This would result in the x-ray evidence potentially joining the other categories of evidence that weighed against pneumoconiosis and conflicted with the pathology evidence. Because the ALJ considered contradictory evidence when evaluating clinical pneumoconiosis, any error regarding the

14

x-ray interpretations could materially affect the ALJ's decision and would not be harmless. *Compare Sea "B" Mining*, 831 F.3d at 255 (error is not harmless when the record contains contradictory evidence and the error may materially affect the ALJ's decision) *with BethEnergy Mines, Inc. v. Cunningham*, 104 F. App'x 881, 888 (4th Cir. 2004) (ALJ's failure to weigh all categories of evidence together when considering pneumoconiosis is harmless where the various categories of evidence do not conflict). We cannot say whether the ALJ would find that Looney established clinical pneumoconiosis by a preponderance of the evidence if the pathology evidence and x-ray interpretations conflict.[1]

The appropriate remedy is to remand to the BRB to consider Island Creek's allegation of error relating to the positive x-ray interpretations in the first instance. *Trump v. E. Assoc. Coal Corp.*, 737 F. App'x 156, 161 (4th Cir. 2018) (where BRB declined to consider ALJ's reasoning, remedy is remand to the BRB to review the ALJ's decision in the first instance). Although we are reluctant to remand Mr. Looney's claim given his uncontested total disability and the strong pathology evidence, we are obliged to "confine our review to the grounds upon which the BRB based its decision." *E. Associated Coal*, 805 F.3d at 510. On remand, the BRB may well conclude that the ALJ properly credited

---

[1] Island Creek also asserts that the BRB incorrectly determined that any alleged error in the ALJ's decision to credit the medical opinions of Drs. Habre and Akhrass was harmless. We disagree with Island Creek's contention. Because the ALJ's clinical pneumoconiosis finding was ultimately based upon the x-ray interpretations and pathology reports, and not the medical opinion evidence, any error in the weight the ALJ gave those medical opinions would not change the ALJ's clinical pneumoconiosis finding and is harmless.

15

the positive x-ray interpretations; however, the BRB must consider this allegation of error, rather than dismiss it as harmless.[2]

## C.

We address two additional issues raised by Island Creek that may be relevant to the BRB's analysis of clinical pneumoconiosis on remand. Island Creek argues that the ALJ and BRB erred in determining that Dr. Akhrass' medical opinion regarding the connection between Looney's pneumoconiosis and MAC infection was well-reasoned. Island Creek also asserts that the BRB erred in concluding that the ALJ adequately explained his reasons for crediting Dr. Akhrass' opinion on that issue. While we find substantial evidence in the record to support the ALJ's finding that Dr. Akhrass' opinion was well-reasoned, we agree with Island Creek that the ALJ's explanation for crediting Dr. Akhrass' opinion is deficient.

When evaluating whether Looney established legal pneumoconiosis, the ALJ relied upon Dr. Akhrass' medical opinion connecting Looney's pneumoconiosis and his MAC infection, stating, "Dr. Akhrass, the only physician to provide a well-reasoned opinion in

---

[2] Island Creek also contends that the BRB improperly upheld the ALJ's decision to discredit the medical opinions of Drs. Spagnolo and Jarboe, which did not diagnose clinical pneumoconiosis. We agree with the BRB that the ALJ sufficiently explained his decision to discredit Dr. Spagnolo's opinion because it relied on a view of the pathology evidence inconsistent with the ALJ's findings. "When an ALJ explains his or her reasoning and does not rely on an impermissible basis, we must defer to her or his discretion and judgment in assessing the conflicts in the evidence." *Sewell Coal Co. v. Triplett*, 253 F. App'x 274, 278 (4th Cir. 2007). The ALJ also permissibly discredited Dr. Jarboe's opinion because it was based in part upon an x-ray interpretation that was excluded from the evidence. An ALJ has discretion to give reduced or no weight to a medical opinion that relies on excluded medical evidence. *See Sewell Coal Co. v. Dempsey*, 429 F. App'x 311, 315–16 (4th Cir. 2011).

16

this matter, plainly stated that [Looney's] black lung predisposed him to MAC." J.A. 542. The BRB held that substantial evidence supported the ALJ's finding that Dr. Akhrass' opinion is well-reasoned, and that the ALJ "acted within his discretion in finding Dr. Akhrass's opinion on the relationship between [Looney's] clinical pneumoconiosis and his MAC infection better reasoned than the opinions of [Island Creek's] experts." J.A. 553, 558. The BRB determined that Dr. Akhrass' opinion established that clinical pneumoconiosis substantially contributed to Looney's disability. J.A. 558.

It is the province of the ALJ to evaluate a physician's opinion. *Compton*, 211 F.3d at 211. As the trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert. *Id.* However, an ALJ must conduct "an appropriate analysis of the evidence to support his conclusion." *Millburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998). "The ALJ must examine the reasoning employed in a medical opinion in light of the objective material supporting that opinion, and also must take into account any contrary test results or diagnoses." *Compton*, 211 F.3d at 211 (citing *Dir., Office of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)). Further, for a reviewing court to overturn an ALJ's finding that an opinion is reasoned, it must find as a matter of law that no reasonable mind could have interpreted and credited the physician's opinion. *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 764 (4th Cir. 1999).

Here, Dr. Akhrass based his diagnoses and opinion on Looney's medical history, his experience as Looney's treating physician over a period of years, and biopsy, x-ray and pulmonary function test results. J.A. 525–26. Dr. Akhrass' opinion satisfies the regulation requirement that it be based on "objective medical evidence," and Dr. Akhrass provided

17

reasoning to support his conclusions. 20 C.F.R. § 718.202(a)(4). Given this, substantial evidence supports the ALJ's finding that Dr. Akhrass' opinion is well reasoned. *See Compton*, 211 F.3d at 212 (evidence supports ALJ's conclusion that medical opinion was well reasoned where physician based diagnosis on claimant's medical history, a physical examination, and pulmonary function test results).

However, the BRB's conclusion that the ALJ adequately explained why he credited Dr. Akhrass' opinion is problematic. The ALJ is required "to adequately explain why he credited certain evidence and discredited other evidence." *Sea "B" Mining*, 831 F.3d at 253 (quoting *Hicks*, 138 F.3d at 533). While this requirement "is not intended to be a mandate for administrative verbosity," the reviewing court must be able to "discern what the ALJ did and why he did it." *Mays*, 176 F.3d at 762 n.10.

Regarding Dr. Akhrass' opinion, the ALJ stated: "Dr. Akhrass's opinion lacks the full documentation that was available to Drs. Jarboe and Spagnolo. However, unlike the other doctors in this case, Dr. Akhrass has been treating [Looney] for his pulmonary condition for years, which helps bolster his opinion despite the relative scarcity of documentation." J.A. 540. Thus, as Island Creek observes, the ALJ appears to rely principally on Dr. Akhrass' status as Looney's treating physician as a basis for crediting his opinion. This explanation, without more, is insufficient. Although a treating physician opinion may be entitled to special consideration, an ALJ may not give a physician's opinion greater weight solely due to his or her treating status. *Consolidation Coal v. Held*, 314 F.3d 184, 187–88 (4th Cir. 2002) (citing *Grizzle v. Pickands Mather and Co.*, 994 F.2d 1093, 1097–98 (4th Cir. 1993)).

18

Further, when the BRB affirmed the ALJ's decision to credit Dr. Akhrass' opinion, the BRB inappropriately provided reasons in the record supporting Dr. Akhrass' opinion that were not stated in the ALJ's decision. J.A. 553–56. *See Westmoreland Coal Co. v. Amick*, 123 F. App'x 525, 533 (4th Cir. 2004) ("Although the Board's conclusions about the credibility of the doctors might be supported by substantial evidence, it is the ALJ's factual findings that we must review.") Thus, the ALJ's explanation for crediting Dr. Akhrass' opinion that Mr. Looney's pneumoconiosis predisposed him to the MAC infection warrants further consideration by the BRB on remand.

## IV.

Accordingly, we grant Island Creek's petition for review, vacate the BRB's decision, and remand to the BRB for further proceedings consistent with this opinion.

*PETITION GRANTED;*
*VACATED AND REMANDED.*